**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x
FRANKLIN BUONO, :
:
                        *Plaintiff,* :    Civil Action No. 7:17-cv-05915 (PMH)
:
v. :
:
POSEIDON AIR SYSTEMS, VICTORY AUTO :
STORE, INC., VICTORY AUTO STORES, INC. :
d/b/a POSEIDON AIR SYSTEMS, :
WORTHINGTON INDUSTRIES, INC., AND :
TYCO FIRE PRODUCTS LP, :
:
                       *Defendants.* :
:
------------------------------------- x
TYCO FIRE PRODUCTS LP, :
:
                *Third-Party Plaintiff,* :
:
v. :
:
OPRANDY'S FIRE & SAFETY INC., :
:
             *Third-Party Defendant.* :
------------------------------------- x

**<u>TYCO FIRE PRODUCTS LP'S RULE 56.1 STATEMENT OF UNDISPUTED
MATERIAL FACTS</u>**

      Pursuant to Rule 56.1 of the Local Rules of the United States Courts for the Southern and Eastern Districts of New York, as well as the Hon. Philip M. Halpern's Individual Practices in Civil Cases, Nos. 2(C) and 4(E), and the Court's January 26, 2021 order, Defendant Tyco Fire Products LP ("Tyco") submits this statement of undisputed material facts in support of its Motion for Summary Judgment seeking dismissal of all of Plaintiff's claims against it.

## FACTS APPLICABLE TO ALL CLAIMS FOR RELIEF AS TO TYCO[1]

1. Oprandy's Fire & Safety ("Oprandy's") is a fire protection company located in Middletown, New York. B. Scott Dep. 6:24–7:2.

**Response**[2]: Deny. O'Prandy's is an air filling facility located in Middletown, New York. B. Scott Dep. 35:9-13.

2. Among other activities, Oprandy's services, inspects, and repairs fire extinguishers, compressed air tanks, and fire suppression systems. Third Party Compl. ¶ 8, ECF No. 75; Answer to Third Party Compl. ¶ 2, ECF No. 90.

**Response**: Admit.

3. Plaintiff was injured during the course of his employment at Oprandy's when a compressed-air cylinder called a "test tank" was overfilled with compressed air by his colleague, Chris Foust. F. Buono Dep. I 95:5–9; Exp. Rep. of Brad James ("James Rep.") at 6; Exp. Rep. of Erik Christiansen ("Christiansen Rep.") at 1–3, 21–22.

**Plaintiff's Response**: Admit.

**Oprandy's Response**: Deny except admit that plaintiff was injured in the course of his employment at O'Prandy's when a "test tank" exploded. F. Buono Dep. I, 29:7-10, 76: 21; 77: 10-14; 110:7-12.

4. The product at issue was a DOT-4BW tank manufactured by Worthington Industries and sold by Tyco as a component of the "Kitchen Knight" or "Kitchen Knight II" fire-

---

[1] Plaintiff asserts causes of action for negligence, breach of warranty, and strict product liability. Am. Compl. ¶¶ 146–237.

[2] Unless delineated "Oprandy's Response" and/or "Plaintiff's Response,", "Response" refers to combined response of both Plaintiff and Third-Party Defendant, Oprandy's Fire & Safety. Responses provided are for the purposes of the summary judgment motion(s) and do not waive any objection to the admissibility of evidence or being contested at trial.

suppression system.  T. Taranto Dep. 43:25–44:15; Kitchen Knight II Technical Manual, TFP-280809-000061 at -73.

> **Response**:  Admit, except deny that the tank was sold as a component of the "Kitchen Knight" or "Kitchen Knight II" fire suppression system.  C. Harding, 21: 22-25. The test tank is a tool offered by Tyco with the Kitchen Knight System for the use of conducting testing of the fire suppression piping system.  Menor Dep. 15: 14-25, 16:3.

5. There is no evidence that any manufacturing or material defect existed in the subject test tank or contributed to the accident.  James Rep. at 5, 15; T. Taranto Dep. 44:22–24.  The rupture of the test tank preceded any other damage or breaks to the test tank.  James Rep. at 5, 16.

> **Plaintiff's Response**:  Deny.  The gauge was not moving.  Buono Dep I:  70

> **Oprandy's Response**: Deny, except admit that there is no evidence to establish causation.

6. Oprandy's did not purchase the test tank from Tyco.  B. Scott Dep. 44:1–46:18.

> **Response**:  Admit.

7. The "Kitchen Knight" systems were developed by Tyco's subsidiary, Pyro-Chem, as wet chemical pre-engineered fire suppression systems.  TFP-280809-001376.

> **Response**:  Admit that cited Tyco's bulletin document so states.

8. Kitchen Knight systems are installed in restaurant cooking appliances, hoods, and ducts, to provide fire protection.  Kitchen Knight II Technical Manual, TFP-280809-000061 at -63.

> **Response**:  Admit that cited Manual document so states.

9. Nozzles are aimed at, among other things, appliances and ducts, which are connected to piping, which feeds to a cylinder of wet chemical agent, pressurized to 225 psi.

Kitchen Knight II Technical Manual, TFP-280809-000061 at -63; Exp. Rep. of Kurt Juliano ("Juliano Rep.") at 5.

**Response**: Admit.

10. When the system is activated—either manually or automatically when a fire is detected—it releases a wet chemical agent that suppresses the fire. Kitchen Knight II Technical Manual, TFP-280809-000061 at -63; Juliano Rep. at 3, 5.

**Response**: Admit.

11. Test tanks are used to test the piping integrity of pre-engineered fire-suppression systems like the Kitchen Knight. A. Menor Dep. 36:18–37:16; Juliano Rep. at 5.

**Response**: Admit.

12. To ensure that piping between the extinguishing agent and the nozzle are intact, system servicers blow compressed gas through the system's pipes using a test tank. Juliano Rep. at 5.

**Response**: Admit.

13. A balloon is often tied to the nozzle of the tank; if the balloon expands, then the servicer knows that the pipes are intact. Harding Dep. 12:18–13:25.

**Response**: Admit that this is a description of what happens during a "balloon test."

14. This "balloon test" is used to satisfy testing requirements set by "authorities having jurisdiction" (e.g., the fire marshal). Harding Dep. 12:18–13:25; B. Scott Dep. 158:13–159:25.

**Response**: Admit.

15. The tank at issue was used by Oprandy's as a portable compressed air source for testing fire suppression systems at field sites. B. Scott Dep. 158:7–12.

**Response**: Admit.

16. Pre-engineered fire suppression systems, including the Kitchen Knight System, require regular maintenance, servicing, and testing both to aid in the continued safe operation of the system and to comply with regulations. Juliano Rep. at 3–4; Kitchen Knight II Technical Manual, TFP-280809-000061 at -63, -110.

**Response**: Admit, except object as to inclusion of statement on what is required to comply with law.

17. Pryo-Chem provides certifications and training for servicers of Kitchen Knight systems to be able to service such systems. TFP-280809-001376–77; Juliano Rep. at 5; C. Harding Dep. 23:13–24:8.

**Response**: Deny. "We looked back and there was never any training on test tanks." C. Harding 28: 6-7, 27: 20-25. Training classes were not provided to consumer or end users of the products. C. Harding 49: 20-25, 50: 2-4. The distributors in those classes were not given any materials to distribute to the consumers to whom they were selling the products, that pertained to test tanks. C. Harding 49: 5-10.

18. Individuals certified to sell, service, and maintain Kitchen Knight systems are called "Authorized Distributors." TFP-280809-001376–77; Juliano Rep. at 5.

**Response**: Admit, with clarification that test tanks are not part of the Kitchen Knight fire suppression system and that balloon tests are performed on such systems using test tanks. C. Harding 21: 22-25. A. Menor Dep. 36:18–37:16.

19. It is a basic premise in the fire protection industry that only individuals and companies that have received the proper certifications should be involved in distributing and servicing fire suppression systems and equipment. Juliano Rep. at 1; K. Juliano Dep. 49:23–50:3;

Kitchen Knight II Technical Manual, TFP-280809-000061 at -63 ("Installation and maintenance of the system must conform to the limitations detailed in this manual and be performed by an Authorized Pyro-Chem Kitchen Knight II dealer.").

>**Response:**  Deny; based upon expert testimony not supported by facts in the record. Brian Scott would be able to buy a test tank, but not an entire system.  B. Scott Dep. 28: 3-9.  The test tank is listed on a parts list that Tyco publishes and may be purchased separately.  C. Harding Dep. 22: 2-9, 40: 16-23, citing document marked Bates number 1371, identified and authenticated at 51: 12-21.
>
>Under industry norm and general practice, it is general and accepted practice in the industry for a manufacturer's system to be serviced by fire protection equipment (FPE) industry service personnel, regardless of whether or not they held title as Authorized Dealer or Authorized Distributor or received certification from the manufacturer.  Taranto Rep p 28, Taranto Aff 4-17, 53-56.

20.     Manufacturers, including Tyco, require these certifications to be renewed on a regular basis for the individual or business to continue to be able to service the manufacturer's systems.  Juliano Rep. at 5.

>**Response:**  Deny as based upon expert testimony not supported by facts in the record. There is nothing in the Tyco manuals for the Kitchen Knight system which informs the consumer about the use of the PCL-240 test tank to test the integrity of piping.  C. Harding Dep. 22: 12-17.  The only materials distributed during the training are the manual for the Kitchen Knight system which does not include instructions for recharging of the test tank.  C. Harding Dep. 25: 22-25, 26: 2-4.

Under industry norm and general practice, it is general and accepted practice in the industry for a manufacturer's system to be serviced by fire protection equipment (FPE) industry service personnel, regardless of whether or not they held title as Authorized Dealer or Authorized Distributor or received certification from the manufacturer. Taranto Rep p 28, Taranto Aff 4-17, 53-56.

21.     To become an Authorized Distributor, businesses and individuals must undergo training either performed or recognized by Tyco.  Juliano Rep. at 5; C. Harding Dep. 23:13–21.

**Response**:  Deny, in that the evidence in the record does not establish what is required to become an Authorized Distributor.  [C. Harding Dep. 23:19-21: "It's part of being an authorized distributor.  They need to receive training."]

22.     Only individuals and businesses who receive the title Authorized Distributor from Pyro-Chem are authorized by Pyro-Chem to test, service, and maintain Kitchen Knight systems. Juliano Rep. at 5; C. Harding Dep. 23:13–21, 25:9–21; Kitchen Knight II Technical Manual, TFP-280809-000061 at -63.

**Response:**  Deny as based solely upon expert testimony not supported by facts in the record as to Pyro-Chem's actual   practices and/or actual application/adherence to same. Authorized distributors of the Kitchen Knight system receive factory certification training to become certified in the design, installation, and maintenance of the fire suppression system. C. Harding Dep. 24: 6-8.  Training is not provided to consumers or end users.  C. Harding Dep. 49: 20-25, 50: 2-4.  The training does not include use of or recharging the test tank, and Tyco never provided any training on test tanks. C. Harding Dep. 27: 2-8, 28: 6-7.

Under industry norm and general practice, it is general and accepted practice in the industry for a manufacturer's system to be serviced by fire protection equipment (FPE) industry service personnel, regardless of whether or not they held title as Authorized Dealer or Authorized Distributor or received certification from the manufacturer. Taranto Rep p 28, Taranto Aff 4-17, 53-56.

23. The Kitchen Knight I and II product manuals both state that maintenance of the systems must be performed by authorized distributors (formerly known as "authorized dealers"). Kitchen Knight II Technical Manual, TFP-280809-000061 at -63; Kitchen Knight I Technical Manual, TFP-280809-000005; Juliano Rep. at 5.

**Response:** Admit that the Manuals make such statements, but deny that there is anything in the Tyco manuals for the Kitchen Knight system which informs the consumer about the use of the PCL-240 test tank to test the integrity of piping. C. Harding Dep. 22: 12-17.

24. Tyco sells test tanks only to Authorized Distributors. Juliano Dep. 102:14–18.

**Response:** Deny as based upon expert testimony not supported by facts in the records. Brian Scott would be able to buy a test tank, but not an entire system. B. Scott Dep. 28: 3-9. The test tank is listed on a parts list that Tyco publishes and may be purchased separately. C. Harding Dep. 22: 2-9, 40: 16-23, discussing document marked Bates number 1371, identified and authenticated at page 51: 12-21.

25. Tyco provides training only to Authorized Distributors. Juliano Rep. at 3–4.

**Response:** Admit, although based solely upon expert testimony, the records supports this statement.

26. As part of a pre-engineered fire suppression system, the test tank at issue was subject to certain laws, regulations, codes, industry standards, and industry practices promulgated by the Department of Transportation (DOT), the Occupational Safety and Health Administration (OSHA), the New York Fire Code, National Fire Protection Association (NFPA), and Compressed Gas Association (CGA). Taranto Dep. 45:8–48:6 (DOT and NFPA); 63:15–24, 70:3–7 (CGA); 71:2–76:4 (New York State Fire Code); 76:7–13 (OSHA); James Rep. at 8 (DOT); Christiansen Rep. at 10, 19 (CGA and DOT); Exp. Rep. of Chason Coelho ("Coelho Rep.") at 9–17 (CGA, NFPA, OSHA); Juliano Rep. at 6–8 (all); Taranto Dep. Ex. 2 (NFPA 17A); Taranto Dep. Ex. 5 (CGA P-1); Taranto Dep. Ex. 6 (CGA C-7); Taranto Dep. Ex. 7 (relevant portions of New York Fire Code); E. Boelhouwer Dep. 52:11–17; *cf.* Taranto Dep. Ex. 3 (NFPA 10); Taranto Dep. Ex. 4 (NFPA 17).

> **Response:** Deny as an improper statement of the law, and because various provisions of the DOT regulations and CGA regulations do not apply to the undisputed facts of this case.

27. The trainings offered by manufacturers of fire-protection systems required to obtain and maintain the proper certifications to service the respective systems remind trainees of their obligations to comply with industry regulations, including those from OSHA, DOT, NFPA, and CGA. Juliano Rep. at 6.

> **Response:** Deny as based upon expert testimony not supported by facts in the record. Deny that Tyco provides any training including the use of test tanks. Authorized distributors of the Kitchen Knight system receive factory certification training to become certified in the design, installation, and maintenance of the fire suppression system. C. Harding Dep. 24: 6-8. Training is not provided to consumers or end users. C. Harding Dep. 49: 20-25, 50: 2-4. The training does not include use of or recharging the test tank,

9

and Tyco never provided any training on test tanks. C. Harding Dep. 27: 2-8, 28: 6-7. The only materials distributed during the training are the manual for the Kitchen Knight system. C. Harding Dep. 25: 22-25, 26: 2-4.

28. Individuals with training or experience in the fire-protection industry would be aware of the hazards of overfilling a cylinder with compressed air, including the risk of explosion. Juliano Rep. at 1, 9; Scott Dep. 95:5–96:15, 96:25–97:12, 97:8–99:5, 200:13–17.

> **Plaintiff's Response**: Deny as based on upon expert testimony not based on facts in the record and on testimony of witness without personal knowledge of what other individuals are aware. Also see, B. Scott Dep 98: 4-8 (did not explain to Chris Foust that tank could explode). Furthermore, is disputed in that in the industry, it can be reasonably expected that certain individuals despite training or experience might not be aware of a real risk of explosion. Taranto Rep p 24-28, 46, 49, 51, 52, 57-62
>
> **Oprandy's Response**: Deny as based upon expert testimony not based on facts in the record, but admit that Mr. Foust was aware of the dangers of overfilling compressed air cylinders, including the test cylinder. B. Scott Dep. 101: 7-18.

29. The pressure rating for the test tank was 225 psi. C. Harding Dep. 32:6–18; James Rep. at 6, 8, 17; T. Taranto Dep. 218:21–25.

> **Response**: Admit.

30. Tyco does not fill Kitchen Knight test tanks with compressed gas before shipping them to customers. A. Menor Dep. 15:16–16:12.

> **Response**: Admit.

31. Chapter VI of the Kitchen Knight Technical Manual states that "[a] pressure regulator must be used" to determine when a system tank's charging pressure has been reached. Kitchen Knight II Technical Manual, TFP-280809-000061 at -112–113.

> **Response:** Admit that the Manuals makes such a statement as it pertains to agent tanks for the fire suppression systems, but deny that there is anything in the Tyco manuals for the Kitchen Knight system which informs the consumer about the use of the PCL-240 test tank to test the integrity of piping.  C. Harding Dep. 22: 12-17.

32. Plaintiff never received any instructions or training on fire suppression systems.  B. Scott Dep. 23:2–14, 29:19–30:5, 73:7–19.

> **Response:** Admit, but note that the test tank was not a part of the fire suppression system. C. Harding Dep., 21: 22-25.

33. Neither Plaintiff, Chris Foust, nor Brian Scott were Authorized Distributors of Kitchen Knight systems.  B. Scott Dep.  28:10–19; 182:24–183:6.

> **Plaintiff's Response:**  Admit in terms that Brian Scott did not have a contract as an authorized Pyro-Chem distributor and that Plaintiff and Chris Foust did not have certificates from Pyro-Chem.  B. Scott Dep.  28:10–19; 182:24–183:6
>
> **Oprandy's Response**:  Admit.

34. Neither Plaintiff, Chris Foust, nor Brian Scott received training from Pyro-Chem or Tyco.  B. Scott Dep. 28:21–15.

> **Response:**  Admit.

35. Oprandy's did not have the product manuals for the Kitchen Knight I or Kitchen Knight II system at the time of the incident.  Oprandy's Responses to Tyco's RFP No. 22; P. Scott Dep. Tr. 12:16–24.

**Response:** Admit.

36. Neither Plaintiff nor Foust reviewed any technical or product manuals for a Pyro-Chem or Kitchen Knight system. B. Scott Dep. 24:23–25:4, 29:19–30:5.

**Response:** Admit.

37. Poseidon Air Systems is the supplier of the transfill equipment used at Oprandy's. E. Boelhouwer Dep. 57:14–17; Coelho Rep. at 16.

**Response:** Deny, based upon expert testimony not based upon any facts in the record.

38. On the date of the incident (February 12, 2016), at approximately 9:00 a.m., Plaintiff assisted his colleague, Chris Foust, in filling the test tank with compressed air for Oprandy's. F. Buono Dep. I 67:16–69:24.

> **Response:** Deny. Chris Foust was filling the tank. F. Buono II Dep. 35: 22-24. Plaintiff did not physically fill the tank that date because he did not know how to, and he had not yet been trained to do so. F. Buono II Dep. 134: 5-13.

39. Plaintiff asked Foust to show him how to fill the test tank with compressed air. Foust then hooked the test tank up to Oprandy's Poseidon Cascade system to attempt to fill the test tank. F. Buono Dep. I 67:19–25, 70:4–21; B. Scott Dep. 157:21–25.

> **Response:** Deny except admit that plaintiff stated that Mr. Foust hooked the test tank up to the cascade system, and plaintiff asked Mr. Foust how to fill the tank.

40. The Cascade system consists of a series of compressed-air containers, capable of holding gases at 5,000+ psi, that are used to fill other containers with compressed gases. B. Scott Dep. 138:2–141:17; Christiansen Rep. at vi, 2.

**Response:**  Deny as based upon expert testimony that is not supported by the facts.  The Poseidon cascade system had a maximum pressure of 4500 psi, at which point it automatically shuts off.  B. Scott Dep. 168: 9-16.

41. Oprandy's used its Poseidon Cascade system to fill test tanks like the one that ruptured on February 12, 2016.  B. Scott Dep. 34:18–36:6.

**Response:**  Admit.

42. After Chris Foust hooked the tank up to the Poseidon Cascade system and attempted to fill it, Mr. Buono listened for air to go into the tank and watched a pressure gauge on the tank to see if it was rising.  Plaintiff thought that there was no air going into the test tank and told Foust that the test tank was not filling.  F. Buono Dep. I 70:7–12, 73:20–23, 125:13–19; F. Buono Dep. II 41:7–11; F. Buono Statement to OSHA, BUONO-001717.

**Response**: Deny to the extent statement is meant to assert that Mr. Buono stated that he was watching a "pressure" gauge to see if it was "rising".  Mr. Buono looked for the gauge to move.  F. Buono Dep I 73:20-23.  He was looking for the gauge to move at all.  F Buono Dep I 125: 12-19.  He didn't think the gauges were a pressure gauge.  F Buono Dep I: 127.

43. When Mr. Buono told Mr. Foust the test tank was not filling, Mr. Foust turned a valve on the Poseidon air tank and pushed down on the valve on the top of the test tank with a screwdriver to start the flow of air.  "While . . . Chris [Foust] was tinkering with" the test tank to attempt to start the flow of air, Plaintiff looked for warnings or instructions on the tank.  Within one or two minutes of Foust throttling air into the tank, it exploded due to overpressurization.  F. Buono Dep. I 70:7–12, 76:16–77:14, 77:10–14, 81:7–20; F. Buono OSHA Statement (BUONO-001715) at BUONO-001717; T. Taranto Dep. 82:3–12; James Rep. at 5, 11.

**Response:** Deny, as is based upon inadmissible evidence and expert testimony not supported by admissible evidence, but admit that plaintiff looked for warnings and instructions on the tank.  Deny that Mr. Foust used a screwdriver, or that Foust pushed down on anything but the top of the valve.  F. Buono I Dep. 38:2-11. Deny chronology presented.  The cited references do not state that Mr. Foust turned a valve on the Poseidon Air tank after Plaintiff told him the test tank was not filling.  The OSHA statement from Plaintiff indicates that "to turn on the air, [Mr. Foust] did something on the Poseidon air tank; I think he turned a valve." (F.Buono OSHA Statement at BUONO-001717.  Next, "to get air in the cylinder [test tank, Mr. Foust]  had to push down on the valve on the of the cylinder with a screwdriver and then turn the valve on the long metal piece to let the air in."  (F. Buono OSHA Statement at BUONO-001717). "Chris would throttle the air with the valve on the long metal piece and we would look at the gauge on the cylinder to see if it was full just like when we fill a fire extinguisher." (F. Buono OSHA Statement at BUONO-001717). Then, when Plaintiff and Mr. Foust did not observe the gauge move on the test-tank, Plaintiff looked to the tank for warnings or instructions, and it exploded. F.Buono dep. 81:11-17

44.	At some point during the filling process, Chris Foust set the upstream pressure regulator to the fully open position, meaning the maximum possible pressure flowed from the Cascade system into the test tank.  Christiansen Rep. at vi, 12, 15.

**Response:** Deny as not supported by any facts in the record, and based solely on expert testimony without personal knowledge of Mr. Foust's actions and otherwise not supported by evidence in the record.

45. The pressure in the test tank at the time it ruptured was at least 1,200 to 1,300 psi, approximately 5 times the rated psi pressure for the tank.  James Rep. at 17.

**Response:**  Deny as not supported by any facts in the record, and based solely on expert testimony that is not supported by evidence in the record.

46. Plaintiff never saw Foust use a pressure regulator or heard him mention that he was using one during the filling process on February 12, 2016.  F. Buono Dep. I 79:18–81:6.

**Response:**  Admit.

### SPECIFIC FACTS APPLICABLE TO THE DEFENSE OF FEDERAL PREEMPTION

47. The ruptured test tank was a Department of Transportation (DOT) type 4BW cylinder designed and manufactured in accordance with DOT specifications.  A. Menor Dep. 21:18–22:16; James Rep. at 6; Christiansen Rep. at 16, 19; Hejzlar Rep. at 6; T. Taranto Dep. 44:4–21, 45:8–46:3; D. Nolen Dep. 47:8–14; B. Scott Dep. 40:9, 53:12–15; Kitchen Knight II Technical Manual, TFP-280809-000064; *see* 49 C.F.R. § 178.61(a).

**Response:**  Admit to the extent facts are stated, but cannot admit to statements of law, including statement that tank was a "DOT type" cylinder in that facts do not establish what a "DOT type" is and/or such description is a statement as to law.

48. The test tank at issue in this case, a 4BW cylinder, was labeled with the following markings: "DOT 4BW 225 M453."  James Rep. at 10; B. Scott Dep., Def.'s Ex. 6; B. Scott Dep. 190:16–192:11 (identifying the markings in Ex. 6).

**Response:**  Admit.

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACT ISSUES[3]**

In addition to the disputed issues indicated above, Plaintiff asserts, pursuant to Southern District of New York Local Civil Rule 56.1(b), the following as to which it is contended that there exists a genuine issue to be tried:

49.     Under industry norms and general practice, whether it was reasonably foreseeable that the incident test tank would be used in the manner used at bar. Taranto Rep p 28, 45, 53- 56, 58, 63-66**.**

50.     Whether it is reasonably foreseeable that there would individuals working in the FPE service industry who would not be familiar with all fire codes, guidelines and regulations promulgated by statutory or agency authorities, and/or would lack or be deficient in recall of same while engaged in their employment. Taranto Rep p 24/3.5.3, 46, 49, 58

51.      Whether it was reasonably foreseeable that individuals working in the FPE service industry would become complacent about hazards in using a test tank in the absence of any instruction or information about same in the manufacturer's technical service manuals, the absence of training about same by the manufacturer, and the absence of labelling on the test tank to provide notice and warnings of hazards, in sharp contrast to the information, training and labelling applied to agent tanks with the same inherent danger. Taranto Rep. p 24-28, 46, 51, 52. 57-62.

 Dated:  February 24, 2021            WILLIAMS & CONNOLLY L.L.P.

　　　　　　　　　　　　　　　　　　　　　　　/s/James W. Kirkpatrick
　　　　　　　　　　　　　　　　　　　　　　　James W. Kirkpatrick
　　　　　　　　　　　　　　　　　　　　　　　Colette Connor
　　　　　　　　　　　　　　　　　　　　　　　Daniel Whiteley
　　　　　　　　　　　　　　　　　　　　　　　725 Twelfth Street NW

---

[3] O'Prandy's is not taking a position on the Plaintiff's Additional Statements.

Washington, DC 20005
Telephone: 202-434-5000
Facsimile: 202-434-5029
jkirkpatrick@wc.com
cconnor@wc.com
dwhiteley@wc.com

and

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
*/s/Thomas M. DeMicco*
Thomas M. DeMicco, Esq. 1133 Westchester Avenue White Plains, New York 10604
Telephone:  914-323-7000
Facsimile: 914-323-7001
Thomas.demicco@wilsonelser.com

ATTORNEYS FOR DEFENDANT/THIRD-PARTY PLAINTIFF TYCO FIRE PRODUCTS LP