EXHIBIT "K"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FRANKLIN BUONO,

                *Plaintiff,*                             Civil Action No.: 7:17-cv-05915 (PMH)

    -vs -                                            **AFFIDAVIT OF EXPERT
THOMAS TARANTO**

POSEIDON AIR SYSTEMS, VICTORY AUTO
STORE, INC., VICTORY AUTO STORES, INC.
d/b/a POSEIDON AIR SYSTEMS,
WORTHINGTON INDUSTRIES, INC., AND
TYCO FIRE PRODUCTS LP,

                *Defendants.*
------------------------------------------------------------X
TYCO FIRE PRODUCTS LP,

                *Third-Party Plaintiff*

    - vs –

OPRANDY'S FIRE & SAFETY INC.,

                *Third-Party Defendant.*
------------------------------------------------------------X

STATE OF NEW YORK      )
                                  )  ss.:
COUNTY OF               )

Thomas Taranto, being duly sworn, deposes and says:

1.     I am an Air System Engineer with the sole proprietorship Data Power Services, LLC, formed in 2005, which is an independent air system solutions provider, conducting training, system assessments and compressed air system audits for a wide range of clients, and hold the professional experience, education and expertise in this field as set forth at length in my attached curriculum vitae. In this capacity, I have been retained by Finkelstein & Partners, LLP,

for expert services in the above-captioned matter, drafted an expert report dated January 8, 2002 relating to same (referred to in Defendant Tyco Fire Products' proposed Rule 56.1 statement of facts as "Taranto Rep."), and was deposed on June 25, 2020 (referred to in Defendant Tyco Fire Products' proposed Rule 56.1 statement of facts as "Taranto Dep.) regarding my expert analysis and findings.

2.  As an expert retained in this matter, I have reviewed the proposed Rule 56.1 statement of material facts drafted by counsel for Defendant Tyco Fire Products ("Tyco"). In this proposed statement, certain claims are made by Tyco that are inaccurate and/or misleading, but as to which I was not asked about at my deposition. I therefore address these claims herein and present analysis and explanation in accordance with my qualifications as an expert in the industry at issue in order to correct discrepancies and clarify the existence of disputed facts.

**A.   THE MATTER OF CERTIFICATION**

3.  Tyco in its proposed Statement of Facts document has widely used the lay terms of "certified", and "certification" as industry jargon without definition. Its statements applying this term are therefore inaccurate and/or misleading.

*The NFPA does not require certification*

4.  On the issue of a company or individual being qualified and/or authorized to provide services on systems such as those sold by Tyco, any required qualifications are up to the Authority Having Jurisdiction (AHJ). National Fire Protection Association (NFPA) 17A defines Authority Having Jurisdiction as: "An organization, office, or individual responsible for enforcing the requirements of a code or standard, or for approving equipment, materials, and installation, or a procedure." NFPA 17A defines "Approved" as: "Acceptable to the authority having jurisdiction."

5. NFPA makes no requirement for certification. In fact, it is silent with respect to certification.

6. Rather, under qualifications NFPA references "trained persons". More specifically, NFPA 17A 1.7 "Qualifications" sets forth: "Only trained persons shall be considered competent to design or lay out, install, and service wet chemical systems."

7. As to a trained person, NFPA 17A defines "Trained" as: "A person who has undergone the instructions necessary to safely design, install, and reliably perform the maintenance and recharge service in accordance with the manufacturer's design, installation, and maintenance manual." [NFPA 17A 3.3.18]

8. Tyco's training is silent with respect to Test tanks. Tyco therefore cannot properly train anyone to work with a "Test Tank" because their training and manual are deficient as discussed in Section 3.6.6 of my report.

9. There are also third parties like the company Brian Scott cited in deposition that provide training. If these third party companies are acceptable to the AHJ, the training would be proper under the AHJ.

### *In the industry, the value of holding a certification is tied to the quality of the certification process*

10. Reliability of a certification obtained from a certification body (CB) is not guaranteed simply because a CB claims their certification program to be beneficial for an individual. In the industry, to be considered in assessing the value or significance of any certification is the CB's accreditation and documented evidence that supports the competence of a CB's certification program.

11. A necessary requirement for a valid certification is that the CB be accredited by a recognized accreditation body such as ANSI/ISO/IEC 17024 accreditation, which is the premier personnel certification body accreditation worldwide. Around four million professionals hold a certification from a program accredited by the ANSI. National Accreditation Board (ANAB) is under ISO/IEC 17024.

12. ANSI/ISO/IEC 17024:2012 sets forth General Requirements for Bodies Operating Certification of Persons.

13. Thus, in this industry, ISO/IEC 17024:2012 is a dependable benchmark for quality for CB programs.

14. The directory of ANSI Accredited Certification Bodies can be found at: https://anabpd.ansi.org/Accreditation/credentialing/personnelcertification/ALLdirectoryListing?menuID=2&prgID=201&statusID=4.

15. Tyco is not listed as an Accredited Certification Body under ANSI nor have they indicated that it is accredited by any comparable certification program. If it is not so accredited, then it has no credentials to give out a certification.

### *Authorized Distributor*

16. There is no NFPA requirement to be recognized as an "Authorized Distributor."

### *Industry Norms*

17. Normal and widely accepted practice in the industry does not require that fire protection equipment companies be a recognized distributor of a brand of equipment in order to service it. It is normal within the industry for such companies to service all brands of equipment, regardless of whether the company is a recognized distributor of the manufacturers and brands.

## B. THE PRESSURE REGULATOR INSPECTION

18. Tyco's claim in its proposed Rule 56.1 statement of facts that the regulator was not damaged and functioned properly is based on meaningless inspection purportedly performed by its expert Dr. Christiansen of Exponent three years after the incident, when the regulator had not been impounded by OSHA and was left uncontrolled, and when I was not notified of this inspection and so given no opportunity to attend.

19. After the incident on February 12, 2016, the pressure regulator was not impounded by OSHA. On August 14, 2018, when an expert from Exponent and myself conducted a site inspection at Oprandy's Fire & safety Equipment, we saw that the regulator was still attached to the cascade system and unsecured/uncontrolled for 2-1/2 years since the incident. Given that, testing the regulator at that time would have no relevancy. The Exponent expert and I decided therefore to mark the regulator's position and put it in a sealed bag to secure it in the event of any decision to conduct future inspection and testing.

20 In securing the regulator at this time, we applied black and orange plastic electrical tape to the regulator's adjustment knob, securing the adjustment position as found then. The Exponent expert and I then put our signatures over crossing pieces of tape in order to be able to confirm the absence of any subsequent tampering. We discussed and agreed that if any future inspection or testing of the regulator were to take place, that everyone should be notified with an opportunity to be in attendance.

21 Despite this understanding, according to Dr. Christiansen in his report (Christiansen Rep.), purportedly a later inspection was conducted by Exponent some time on or after May 9, 2019 without my knowledge or any prior notification. Dr. Christiansen states in his

report that "The incident regulator, incident valves and lines, and incident cascade cylinders were collected on May 9, 2019 as evidence for off-site examination and testing."

22      Dr. Christiansen's investigation of and findings related to "physical investigations of the exemplar and incident regulator" are irrelevant. More than two years passed between the incident on February 12, 2016 and our securing the incident regulator at the site inspection in August of 2018. During this 2-1/2 years period of time, access to the incident regulator was open and unrestricted.

23      While Dr. Christiansen points out in his report that during the August 14, 2018 site inspection "To preserve the position of the pressure regulator adjustment knob, several pieces of tape were placed across the face of the knob, extending down to the regulator body...," he fails to note that the Exponent representative and I both applied our signatures over the taped regulator in order to safeguard against tampering and to provide a means of revealing if the adjustment knob had been subsequently disturbed.

24      As per the Christiansen Rep., Exponent then collected the incident regulator, incident valves and lines, and incident cascade cylinders on May 9, 2019 - more than 3 years after the incident - as evidence for off-site examination and testing.

25.     Given the passage of time and the fact that the incident regulator was not secured to preserve it in its same position/condition as at the time of the incident, the belated inspection and testing of the incident regulator has no probative value here.

26      Additionally, the examination and testing was not proper as I was never advised that such testing was going to be performed and that there would be tampering of the regulator we had secured on August 14, 2018.

27. With respect to the "exemplar regulator" of Dr. Christiansen's evaluation referred to in his report, there is no correlation between the incident and exemplar regulator's adjustment. *"With no pressure applied to the inlet, the exemplar regulator bottomed out in the fully open position after 9 1/3 revolutions in the clockwise direction, while the distance between the regulator body and adjustment knob was measured to be 0.441 inches. Exponent notes this distance is greater than that measured on the incident regulator, indicating the exemplar likely has different internal components."* (Christian Rep 14)

### C. CAUSE/PREVENTION

28. As understood in this industry applying definitions as set forth by NFPA and US Department of Energy (DOE), for any single Cause; Casual Factor; Contributing Cause; Contributing Factor; it cannot be known what singular factor, or combination of factors and the related Contributing Factor Chain (aka Casual Factor Chain) would have prevented the incident. Tyco's proposed Rule 56.1 statements referring to this issue are therefore illogical under these definitions.

THOMAS TARANTO

Sworn to, before me, this
**30** day of October 2020.

-Notary Public-
DARREN T. BREGANDE
Notary Public, State of New York
Qualified in Onondaga County
Reg. No. 01BR6119611
My Commission Expires 1/13/2021