**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------- x
FRANKLIN BUONO,                                :

                            *Plaintiff,*     :

   v.                                       :

POSEIDON AIR SYSTEMS, VICTORY AUTO    :    Civil Action No. 7:17-cv-05915 (PMH)
STORE, INC., VICTORY AUTO STORES, INC.
d/b/a POSEIDON AIR SYSTEMS,
WORTHINGTON INDUSTRIES, INC., AND
TYCO FIRE PRODUCTS LP,

                         *Defendants.*

---------------------------------------- x
TYCO FIRE PRODUCTS LP,

                      *Third-Party Plaintiff,*

   v.

OPRANDY'S FIRE & SAFETY INC.,

                      *Third-Party Defendant.*

---------------------------------------- x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF TYCO FIRE PRODUCTS LP'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**ARGUMENT** ...................................................................................................................................1

I.  Plaintiff's Arguments Against Preemption Have Been Roundly Rejected. .........................1

    A.  The "Empty Packaging" Exemption Is Irrelevant and Inapplicable. ........................2

    B.  There is No Purpose-Based Exception to the HMTA. .............................................4

    C.  The Plain Language of the HMTA Supports Preemption. .......................................5

II.  The Risk of Explosion was Open and Obvious to Intended Users. ....................................6

III.  Plaintiff Misconstrues the Component-Parts Doctrine. ......................................................7

IV.  Undisputed Evidence Shows that Any Warning Would Not Have Been Heeded. ..............9

V.  Plaintiff's Miscellaneous Claims Fail. ..............................................................................10

**CONCLUSION** ............................................................................................................................10

# **TABLE OF AUTHORITIES**

## **CASES**

*Arnow v. Aeroflot Russian Airlines*, 980 F. Supp. 2d 477 (S.D.N.Y. 2013) .................................. 9

*Beruashvili v. Hobart Corp.*, 2010 WL 11622750 (E.D.N.Y. July 15, 2010) ............................. 10

*Billsborrow v. Dow Chem., U.S.A.*, 579 N.Y.S.2d 728 (App. Div. 1992) ...................................... 8

*In re New York City Asbestos Litigation*, 59 N.E.3d 458 (N.Y. 2016) ........................................... 9

*Lasarte v Custom Performance*, 2018 WL 3879222 (Cal. Super. May 30, 2018) ..................... 4, 5

*Liriano v. Hobart Corp.*, 170 F.3d 264 (2d Cir. 1999) ................................................................... 7

*Mawa Inc. v. Univar USA Inc.*, 2016 WL 2910084 (E.D. Pa. May 19, 2016) ........................ 3, 4, 6

*Orellana v. Boro-Wide Recycling Corp.*, 856 N.Y.S.2d 25 (Sup. Ct. 2007) ............................... 4, 8

*Parrish v. JCI Jones Chems., Inc.*, 2019 WL 1410880 (D. Haw. Mar. 28, 2019) ...................... 4, 6

*Rastelli v. Goodyear Tire & Rubber Co.*, 591 N.E.2d 222 (N.Y. 1992) ......................................... 8

*Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) ......................................................................... 1, 4

*Roth v. Norfalco LLC*, 651 F.3d 367 (3d Cir. 2011) .................................................................. 1, 4

*Whitfield v. Triad Transp., Inc.*, 2008 WL 139082 (E.D. Ark. Jan. 10, 2008) ............................... 4

## **STATUTES, RULES, AND REGULATIONS**

49 C.F.R. § 171.1 ............................................................................................................................ 2

49 C.F.R. § 172.300 *et seq.* ............................................................................................................ 5

49 C.F.R. § 172.400 *et seq.* ............................................................................................................ 5

49 C.F.R. § 173.29 ...................................................................................................................... 2, 3

49 C.F.R. § 173.115 ........................................................................................................................ 5

49 U.S.C. § 5125 ..................................................................................................................... 3, 5, 6

Hon. Philip M. Halpern Individual Practice in Civil Cases 4(H)(i) ............................................... 6

Local Civil Rule 56.1(b) ................................................................................................................ 6

# OTHER AUTHORITIES

A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ............................ 3

*Applicability of the HMR to Loading, Unloading, and Storage*, 70 Fed. Reg. 20,018 (Apr. 15, 2005) .................................................................................................................................... 3

*Common Law Tort Claims Concerning Design and Marking of DOT Specification 39 Compressed Gas Cylinders*, 77 Fed. Reg. 39,567 (July 3, 2012) ................................. 1, 4, 5, 6

*DOT Chart 15: Hazardous Materials Markings, Labeling, and Placarding Guide*, https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/Hazardous_Materials_ Markings_Labeling_and_Placarding_Guide_508CLN.pdf ........................................................ 5

FAA, *Marking & Labeling Your Shipment*, https://www.faa.gov/hazmat/safecargo/ how_to_ship/mailing_labeling/ ................................................................................................ 5

*Hazardous Materials Regulations, Proposed Rules*, 39 Fed. Reg. 3028 (Jan. 24, 1974) ................ 2

Restatement (Third) of Torts: Prod. Liab. § 5 (1998) ................................................................ 8, 9

Plaintiff's opposition comes up short in several crucial respects. His preemption arguments are based on abrogated cases, irrelevant regulations, and a purpose-based exception that has been universally rejected by courts. With respect to duty, rather than contend that the risk of explosion was anything other than obvious, Plaintiff attempts to obscure the legal test for obviousness and twists his claims in ways that are simply incompatible with the only comparable warning that his expert has identified to date. And rather than establish that Tyco was somehow responsible for the hazards created by Oprandy's incorporation of a low-pressure tank into a high-pressure system, he cites to irrelevant law and misconstrues the component-parts doctrine. Finally, Plaintiff has done nothing to change the fact that the sole evidence in the record—supported by Plaintiff's own expert—shows that any warning would have had no effect on the incident.

## ARGUMENT

### I. Plaintiff's Arguments Against Preemption Have Been Roundly Rejected.

Congress created an expansive preemption provision in the HMTA to provide predictability to manufacturers, sellers, and users of DOT-specification hazardous-materials containers. In 2005, Congress strengthened this provision in the face of state requirements that were inconsistent with federal law. *See, e.g., Roth v. Norfalco LLC*, 651 F.3d 367, 370–71 (3d Cir. 2011) (internal citation omitted). In 2008, the Supreme Court held that state "requirements" include common-law duties for purposes of preemption. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008). In 2012, the DOT clarified that DOT marking and labeling requirements apply at all times a cylinder is represented "as qualified for use in transporting hazardous materials." *Common Law Tort Claims Concerning Design and Marking of DOT Specification 39 Compressed Gas Cylinders*, 77 Fed. Reg. 39,567 (July 3, 2012). Rather than engage these directly on-point authorities, Plaintiff relies exclusively on abrogated cases to assert that the HMTA "has never been held to completely preempt state common law claims." Yet recent

1

decisions have uniformly done just that. Opening Br. 13–16. With no good law in his favor, Plaintiff resorts to misapplied regulations and rejected arguments, each of which fails:

### A. The "Empty Packaging" Exemption Is Irrelevant and Inapplicable.

Plaintiff does not dispute that the tank at issue was manufactured and marked in accordance with DOT requirements under the Hazardous Materials Regulations (HMR). His assertion that the HMTA's preemption provision does not apply because the "DOT has not designated an empty container as subject to regulation under HMTA" is thus incorrect for five independent reasons.

***First***, the provision simply does not apply to tanks with intact DOT markings. Under its plain text, the HMR exemption for empty containers applies only when the DOT-required markings have been removed. 49 C.F.R. § 173.29(b)(1). Here, the evidence is undisputed that at all relevant times, the test tank bore DOT markings. Tyco's 56.1 Statement ¶ 48; Ex. 2 (James Rep.) at 10; Ex. 11 (B. Scott Dep.) 190:16–192:11; *cf.* Pl.'s Ex. D (Getter Dep.) 83:9–21.

***Second***, § 173.29, contained within a subpart of the HMR governing the "Preparation of Hazardous Materials for Transportation," applies only to transportation and transportation-preparation, not the design or sale of packagings. *Compare* 49 C.F.R. § 173.29(a), *with id.* § 171.1(a)–(c). Because Tyco was not the shipper or preparer of hazardous materials, this provision is inapplicable. *See Hazardous Materials Regulations, Proposed Rules*, 39 Fed. Reg. 3028 (Jan. 24, 1974) (noting that § 173.29 was enacted to clarify that packagings with residual hazardous materials should "be *carried* in the same manner as if they were filled" (emphasis added)).

***Third***, even if Tyco were a shipper and the tank's DOT markings were removed, the HMTA's preemption provision would still apply. Although § 173.29(b) exempts qualifying empty containers from certain requirements in the Hazardous Materials *Regulations* during shipment and preparation for shipment, it does not exempt the container from the preemption provision of the HMTA, which is in the U.S. Code. 49 C.F.R. § 173.29(b) (referring to "this subchapter"). The

2

HMTA preempts any state requirement "about" markings or labels that are not "substantively the same" as those in the HMTA or HMR.  49 U.S.C. § 5125(b).  If a container meets § 173.29(b), then the HMR exempts the container from the HMR labeling requirements; it does not remove the container from the HMTA's jurisdiction or the HMR's regulatory scheme.[1]  A state law requiring a label thus would be preempted as not "substantively the same" as the HMR's requirements concerning marking or labeling, because it would impose a burden where none exists.

*Fourth*, an alternate reading would run afoul of the canon against statutory interpretations that lead to absurd results.  A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 234–39 (2012).  Under Plaintiff's proposed construction, a manufacturer of empty containers would be subject to a patchwork of heightened labeling requirements, while the entity that fills the containers with hazardous materials would not.  Not only would this defy common sense, but it would undermine the primary purpose of the HMTA's preemption provision—ensuring national uniformity "at all times that [a cylinder] is 'represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce.'"  Opening Br. 13.

*Fifth*, Plaintiff's argument has already been squarely rejected by the DOT.  When the DOT promulgated final rules concerning the applicability of the HMR to containers not actually in transit, an entity made the same argument as Plaintiff.  *Applicability of the HMR to Loading, Unloading, and Storage*, 70 Fed. Reg. 20,018 (Apr. 15, 2005).  There, the entity appealed the final rule based on a perceived lack of uniformity, arguing that, for preemption purposes, the "final rule would seem to say a rail car is DOT-covered when filled, but not before." *Id.* at 20,024 (cleaned

---

[1] Plaintiff's reliance on *Mawa* is misplaced.  There, the container was labeled as empty but contained residual chlorine. *Mawa Inc. v. Univar USA Inc.*, 2016 WL 2910084, at *1 (E.D. Pa. May 19, 2016).  Plaintiff alleged a violation of 49 C.F.R. § 173.29(b). *Id.*  In noting that containers with residual hazardous materials are subject to the HMTA/HMR, the court simply clarified that the empty-container exemption of 49 C.F.R. § 173.29(b) did not apply. *Id.* at *5.  It did not suggest that its finding of preemption hinged on whether the container held residual chlorine. *Id.*

3

up). The DOT rejected the appeal, "not[ing] that DOT specification packagings, such as rail tank cars . . . and cylinders, are subject to DOT regulation at all times . . . *whether the [container] is empty or loaded with hazardous materials*." *Id.* (emphasis added). This determination is entitled to *Chevron* deference. *See* Opening Br. 13.

### B. There is No Purpose-Based Exception to the HMTA.

Tyco sold the test tank for use in transporting a hazardous material (compressed gas) from site to site for testing Kitchen Knight systems. Plaintiff's assertion that the HMTA applies only during actual transportation has been uniformly rejected since the issue was first decided by a federal court of appeal.[2] *See* Opening Br. 13–15. As several courts have held, a contrary reading would frustrate the HMTA's goal of national uniformity for hazardous-material containers. *See Roth*, 651 F.3d at 379; *Parrish v. JCI Jones Chems., Inc.*, 2019 WL 1410880, at *6 (D. Haw. Mar. 28, 2019); *Mawa Inc. v. Univar USA Inc.*, 2016 WL 2910084, at *5 (E.D. Pa. May 19, 2016); *Lasarte v Custom Performance*, 2018 WL 3879222, at *4–5 (Cal. Super. May 30, 2018).

More fundamentally, in an adjudication concerning this very issue, the DOT unequivocally held that preemption applies "at all times [that] a container [is] qualified for use in transporting hazardous materials." *Common Law Tort Claims Concerning Design and Marking of DOT Specification 39 Compressed Gas Cylinders*, 77 Fed. Reg. 39,567 (July 3, 2012). Plaintiff's attempt to avoid this *Chevron*-imbued decision fails. Whether the container was refillable had no

---

[2] As noted above, all of the cases cited by Plaintiff predate the DOT's 2012 preemption determination, and nearly all predate *Riegel* and the 2005 HMTA amendments. The only that do not are *Orellana* and *Whitfield*. Neither case remains good law in light of the DOT's 2012 preemption determination, but they are also irrelevant. In *Orellana*, the court found that the HMTA did not apply because the case concerned the *disposal* of hazardous materials, which it believed fell outside of the scope of the statute. *Orellana v. Boro-Wide Recycling Corp.*, 856 N.Y.S.2d 25 (Sup. Ct. 2007). In *Whitfield*, the court resolved a removal dispute by determining that HMTA preemption did not *per se* create "complete preemption" sufficient to mean any state common law claim "arises" under federal law. *Whitfield v. Triad Transp., Inc.*, 2008 WL 139082, at *1 (E.D. Ark. Jan. 10, 2008). The court noted that "determining whether plaintiffs were negligent under state law may require reference to HMTA regulations." *Id.*

relevance. The adjudication was about whether a manufacturer could be required to create warnings "to protect the end user." *Id.* at 39,569. The DOT held that "it [was] immaterial whether the cylinder in question was at its final destination or how long it had been there, *if it was marked indicating it was a DOT-39 cylinder; it was by definition subject to DOT regulation*[,] [and] [t]herefore, . . . state requirements of additional . . . packaging warnings . . . [were] . . . preempted." *Id.* (emphasis added). There is simply no basis to infer an exception for refillable containers.[3]

### C. The Plain Language of the HMTA Supports Preemption.

Plaintiff's proposed warning—as vague and undefined as it remains—is easily encompassed by the language of 49 U.S.C. § 5125. First, despite using the word "label," his proposal is actually that Tyco should have included a "marking," as these terms are used by the DOT. In comparison to labels—which generally pertain to the material placed into the cylinder, *see* 49 C.F.R. § 172.300 *et seq.*—"markings" pertain to the container itself, *see id.* § 172.400 *et seq.*[4] This is why § 5125(b)(1)(B)—which applies to "hazardous materials"—uses the word "labeling," while § 5125(b)(1)(E)—which applies to the "container"—does not. Because Tyco shipped the tank empty, any warning would be classified as a "marking," and thus fall within the scope of § 5125(b)(1)(E). And even if Tyco did fill the tank, any warning would be preempted by § 5125(b)(1)(B) as the "labeling, marking, and placarding" of hazardous materials.

This reading is consistent with how the DOT and courts have interpreted the HMTA. In 2012, the DOT found that a state common-law claim that a cylinder should have been "marked or

---

[3] Plaintiff's assertion that the test tank was "not manufactured to supply . . . hazardous materials" is simply incorrect. It was designed and manufactured in accordance with DOT Hazardous Materials requirements, Tyco's 56.1 Statement ¶ 47, to store compressed air, which is a Hazardous Material, 49 C.F.R. § 173.115(b).

[4] *See also* FAA, *Marking & Labeling Your Shipment*, https://www.faa.gov/hazmat/safecargo/how_to_ship/mailing_labeling/; *DOT Chart 15: Hazardous Materials Markings, Labeling, and Placarding Guide*, https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/Hazardous_Materials_Markings_Labeling_and_Placarding_Guide_508CLN.pdf.

5

labeled . . . with warnings" was preempted under § 5125(b)(1)(E). 77 Fed. Reg. 39,568. Similarly, the *Parrish* court read § 5125(b)(1)(B) and § 5125(b)(1)(E) in tandem to hold that § 5125(b)(1) "clearly applie[d]" to the plaintiff's warnings claims based on the risks of leaking chlorine. *Parrish*, 2019 WL 1410880, at *4; *see also Mawa Inc.*, 2016 WL 2910084, at *5.

## II. The Risk of Explosion was Open and Obvious to Intended Users.

Plaintiff makes several legal and factual missteps in his attempt to assert that Tyco had an obligation to warn against the hazard of filling a 225-psi tank with 1,200 psi of air.

With respect to the law, Plaintiff ignores that the open-and-obvious test is *objective*, asking whether "those who would be expected to use the product" would appreciate the risk. Opening Br. 17. Plaintiff unquestionably was not a member of the expected class of users. Opening Br. 18–19. The tank was designed for trained fire-service professionals, and undisputed testimony—buttressed by mandatory regulations—confirms that any such person would be familiar with the hazards of overfilling a tank. *Id.* Contrary to Plaintiff's assertion (and his characterization of Brian Scott's joke), Mr. Scott and Mr. Foust were familiar with these hazards. Mr. Scott found it unnecessary to explain to Mr. Foust that such a risk existed because, in his view, individuals who have experience with "air pressures" are "smart enough to realize that." Ex. 11 (Scott Dep.) 97:25–98:15. He also adamantly asserted that Mr. Buono was not supposed to use the test tank because "he had no training." *Id.* 128:3–9. Thus, even according to Mr. Scott, Mr. Buono was not in the class of foreseeable users, and anyone who was would have been aware of the risks of overfilling.

As for the facts,[5] Plaintiff concedes that, in the abstract, the risks associated with pumping 1,200 psi of air into a 225-psi rated tank are obvious, but states that because Foust and Buono did

---

[5] Tyco notes that, in contravention of Local Civil Rule 56.1(b) and the Court's Individual Rule 4(H)(i), Plaintiff does not cite the parties' 56.1 statement for his factual characterizations, to which Tyco has not had an opportunity to respond. Tyco disagrees with many of Plaintiff's characterizations of the facts.

6

not know how much air was entering the tank, the risk was somehow rendered latent. First, this is plainly incorrect; Foust was attempting to throttle air into the tank, and in so doing put the output regulator in the "fully open" position, meaning that Foust could readily determine, by looking at that gauge, that up to 5,000 psi of air could enter the tank. Tyco's 56.1 Statement ¶ 44; Ex. 3 (Christiansen Rep.) at vi, 12, 15. The manual is clear that the gauge on the tank should not be used to determine if air is flowing into the tank, and undisputed expert testimony establishes that any expected user would know this warning applies to the test tank. Ex. 5 at TFP-280808-000112; Ex. 7 (Juliano Rep.) at 7. Thus, it was obvious that excessive air could flow into the tank.

Moreover, Plaintiff's argument undermines its expert's assertion as to what should have been included on the tank. Ex. 4 (Taranto Dep.) 175:12–17; Pl.'s Ex. I at DPSvcs-Buono-000114. The only relevant information on the agent tank's name plate is that the tank should be "pressurize[d] to 225 psi." and that the "contents [are] under pressure." Pl.'s Ex. I at DPSvcs-Buono-000114. In conceding that those facts were obvious, Plaintiff has conceded that any of his expert's proposed warnings would have done nothing more than warn against the obvious.

Plaintiff's reliance on *Lirano* is misplaced. First, he has not proposed that Tyco should have "ma[de] known the existence of alternatives." *Liriano v. Hobart Corp.*, 170 F.3d 264, 270 (2d Cir. 1999). The only warning that has been identified in this case—something "similar" to the name plate on the Kitchen Knight II "agent" tank—contains no description of an "alternative," as contemplated by the *Liriano* court. Pl.'s Ex. I at DPSvcs-Buono-000114. Moreover, there is absolutely no evidence that listing an alternative would have changed Mr. Foust's behavior.

### III. Plaintiff Misconstrues the Component-Parts Doctrine.

Plaintiff cannot establish Tyco had a duty to warn against dangers arising from the system into which its product was incorporated, and his attempts to do so fail. First, he conflates the question of whether Tyco owed a legal *duty*—which is a matter of law to be decided by the Court,

7

*see* Opening Br. at 16—with the question of whether Oprandy's failure-to-warn constituted a superseding cause. *Billsborrow* and *Orellana* are thus irrelevant. *Billsborrow v. Dow Chem., U.S.A.*, 579 N.Y.S.2d 728 (App. Div. 1992) (addressing only causation); *Orellana v. Boro-Wide Recycling Corp.*, 856 N.Y.S.2d 25 (Sup. Ct. 2007) (same).

Second, there is no basis for Plaintiff's assertion that "[n]either the test tank or the high-pressure system is a component as understood by" the component-parts doctrine, Opp'n 21, apparently because the high-pressure system was being used to fill the tank. Plaintiff does not explain this argument, or offer any legal or factual support. In *Rastelli*, the tire at issue was mounted onto a compatible rim assembly and filled. *Rastelli v. Goodyear Tire & Rubber Co.*, 591 N.E.2d 222, 223–24 (N.Y. 1992). Here, the tank was incorporated into the Cascade filling system and filled with air. Although, like the tire in *Rastelli*, the tank could be removed from the system, it was a component of the broader Cascade system at the time of the incident.

Finally, Plaintiff's attempts to distinguish *Rastelli* come up short. In comparing the facts at issue to situations in which *both* manufacturers have a duty to warn, the *Rastelli* court focused on whether the manufacturer at issue "created the dangerous condition," which Tyco did not do here. *See id.* at 226. This is consistent with the approach in the Second Restatement of Torts, which "recognize[s] that component sellers who do not participate in the integration of the component into the design of the product should not be liable merely because the integration of the component causes the product to become dangerously defective." Restatement (Third) of Torts: Prod. Liab. § 5 cmt. a (1998).[6]

---

[6] With respect to Plaintiff's citation to NFPA 10, his interpretation is foreclosed by the plain text of NFPA 10. *See* Opening Br. 7 & n.3. Plaintiff's expert admitted that he is not an expert at the relevant NFPA provisions, *see* Ex. 4 (Taranto Dep.) 17:24–18:14, and his interpretation of the standards is patently unreasonable, *see id.* 54:5–63:14. For clarity, Tyco intends to move to exclude Plaintiff's liability expert under, among other provisions, Fed. R. Evid. 702.

**IV.     Undisputed Evidence Shows that Any Warning Would Not Have Been Heeded.**

Plaintiff has done nothing to overcome the fact that his own causation expert, when asked, agreed that nothing "in particular [on the warning label] . . . would have prevented the accident." Ex. 4 (Taranto Dep.) 176:6–14; *see also* Opening Br. 22.  It is thus beyond factual dispute that there is no causal relationship between any warning and Plaintiff's injuries.  Plaintiff also still has not identified what warning he contends should have been included on the tank, and thus has not met his duty of establishing causation.  Opening Br. 21–24.  The arguments he does make are irrelevant and, in any event, incorrect:

First, the law is clear that it is *Plaintiff's* burden to show that a warning would have been heeded.  *See* Opening Br. 22; *see also In re New York City Asbestos Litigation*, 59 N.E.3d 458 (N.Y. 2016).  Rather than point to evidence showing this to be the case, he speculates as to Mr. Foust's mindset, experience, and supposed knowledge base.  Regardless, the testimony of Plaintiff's proffered expert conclusively establishes that a warning would have had no effect on the outcome of the situation, so the legal allocation of the burden is irrelevant.  *See* Opening Br.22.

Second, Plaintiff's April 22, 2021 declaration should not be considered because it is speculative, self-serving, conclusory, and contradicts his expert's deposition testimony.  *E.g.*, *Arnow v. Aeroflot Russian Airlines*, 980 F. Supp. 2d 477, 482 (S.D.N.Y. 2013).  The record is clear that Plaintiff was completely unfamiliar with the tank at issue and how to fill it.  Plaintiff now asserts, for the first time and in the face of summary judgment, that had there been a warning on the tank, he would have interrupted Mr. Foust and told him what was on the tank.  He makes no effort to say what content, location, or visual effects of a warning would have caused him to interrupt Mr. Foust, let alone that his interruption would have changed Mr. Foust's behavior.

Third, Plaintiff mischaracterizes Tyco's manual and the reasons that it was not provided to Mr. Foust.  Tyco's manual clearly states that the tank should be pressurized to 225 psi and that "a

9

pressure regulator must be used." Ex. 5 at TFP-280808-000112. To intended users of the product, this information would be understood as warning against overfilling and applying to both test tanks and agent tanks. Ex. 7 (Juliano Rep.) at 7. As for Plaintiff's speculation that Mr. Foust did not review the manual because nothing in the manual was specific to the test tank, undisputed evidence in the record shows this is not the case. Mr. Scott said "there would be no reason" for Mr. Foust to review the Tyco manual, Ex. 11 (Scott Dep.) 29:20–30:1, because Mr. Scott created his own employee handbook. *Id.* at 13:17–14:17. This is confirmed by the fact that Mr. Foust never reviewed the manual for the Cascade system, which he regularly used. *Id.* at 19:16–20:11.

Fourth, Plaintiff's assertions related to training merit little response. Tyco's training centered on the Kitchen Knight manuals, which have a chapter devoted to recharge, which any foreseeable user would understand to apply to the test tank. Ex. 7 (Juliano Rep.) at 7. Moreover, Tyco's training does not purport to cover the handling of compressed gases; rather, it reminds its trainees to comply with CGA requirements, which require separate training. *Id.* at 6, 7–8.

V. **Plaintiff's Miscellaneous Claims Fail.**

For the reasons set forth in the Opening Brief at pages 24–25, Plaintiff's breach-of-warranty, design-defect, and manufacturing-defect claims fail. His contrary assertions are devoid of any factual or legal bases. As to the purported "manufacturing defect," Plaintiff ignores that expert testimony is required to establish such a claim, and in any event has done nothing to show any purported defect existed at the time the gauge left Tyco's control nearly twenty years earlier. *See Beruashvili v. Hobart Corp.*, 2010 WL 11622750, at *14 (E.D.N.Y. July 15, 2010).

**CONCLUSION**

Tyco respectfully requests that this Court grant Tyco summary judgment as to all of Plaintiff's claims against Tyco and provide any further relief as this Court deems proper.

Dated: May 14, 2021
Washington, D.C.

Respectfully submitted,

_____
Colette Connor (admitted *pro hac vice*)
James Kirkpatrick (admitted *pro hac vice*)
Daniel Whiteley (admitted *pro hac vice*)
Williams & Connolly LLP
725 Twelfth Street, NW
Washington, D.C. 20005

Phone: (202) 434-5000
Fax:    (202) 434-5029
Email: jkirkpatrick@wc.com

*and*

Thomas M. DeMicco
WILSON, ELSER, MOSKOWITZ,
EDELMAN & & DICKER LLP
1133 Westchester Avenue
White Plains, NY 10604
Phone: (914) 323-7000
Fax:    (914) 323-7001
Email:  thomas.demicco@wilsonelser.com

*Attorneys for Tyco Fire Products LP*