UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANKLIN BUONO,

                              Plaintiff,

                    -against-

POSEIDON AIR SYSTEMS, et al.,

                              Defendants.

**MEMORANDUM OPINION
AND ORDER**

17-CV-05915 (PMH)

PHILIP M. HALPERN, United States District Judge:

Franklin Buono ("Plaintiff") was injured at work, a new job he had begun only eighteen days earlier, when a tank filled with compressed air exploded and he lost his leg. Plaintiff, in the aftermath of this injury, brought suit against, *inter alia*, Tyco Fire Products LP ("Defendant"). (*See* Doc. 51, "Am. Compl.").[1] The Amended Complaint, the operative pleading, pressed four claims for relief against Defendant: (1) negligence based on a design or manufacturing defect; (2) breach of warranty; (3) strict products liability; and (4) negligence based on failure to warn. (*Id*. ¶¶ 146-236). Defendant filed its Answer (with crossclaims) on July 30, 2018. (Doc. 54, "Answer"). Months later, on October 26, 2018, Defendant filed a Third-Party Complaint against Plaintiff's employer, Oprandy's Fire & Safety, Inc. ("Oprandy's"), seeking defense, indemnification, and contribution. (Doc. 75, "3d Party Compl."). Oprandy's filed its Answer (with counterclaims) on January 7, 2019, and Defendant filed its response thereto on January 29, 2019. (Doc. 90, "3d Party Ans."; Doc. 96). Discovery closed on September 1, 2020. (Aug. 10, 2020 Min. Entry).

---

[1] Plaintiff and Defendant voluntarily dismissed their claims and crossclaims against Poseidon Air Systems and Worthington Industries, Inc. without prejudice, and their claims and crossclaims against Victory Auto Store, Inc., Victory Auto Stores, Inc. d/b/a Poseidon Air Systems, Pamela L. Simpers, Pamela L. Simpers d/b/a Victory Auto Stores, Bauer Comp Holding GMBH, Bauer Kompressoren GMBH, and Bauer Compressors, Inc. without limitation. (Doc. 68; Doc. 84; Doc. 148). The parties also agreed to substitute Defendant for Ansul, Inc. and Tyco Fire Protection Products. (Doc. 63). By operation of these dismissals, Plaintiff now proceeds against only Defendant.

The Court held a pre-motion conference by telephone on February 25, 2021 to address both Defendant's and Oprandy's contemplated motions for summary judgment. (Feb. 25, 2021 Min. Entry). The Court, at that conference, granted Defendant leave to file its motion for summary judgment but denied Oprandy's request "without prejudice to renew after [Defendant's] motion is adjudicated." (*Id.*). All motion papers, relying on the 56.1 Statement filed in advance of the pre-motion conference, were filed on May 14, 2021. (Doc. 171; Doc. 172, "Def. Br."; Doc. 173, "Kirkpatrick Decl."; Doc. 175-15, "Opp. Br."; Doc. 175, "Fromson Decl."; Doc. 176, "Reply Br."; *see also* Doc. 170-1, "56.1 Stmt.").

Oral argument was held on November 2, 2021 and, at that appearance, Plaintiff voluntarily dismissed, with prejudice, his claims for negligence based on a design or manufacturing defect and breach of warranty. (Nov. 2, 2021 Min. Entry; *see also* Doc. 190 at 3:14-8:3). Consequently, only two claims for relief—strict products liability and negligence based on failure to warn—remain to adjudicate. At the close of oral argument, the Court directed, *inter alia*, that:

> [t]he parties shall each file a letter no more than five double-spaced pages addressing: (1) the question of preemption under the Hazardous Materials Transportation Act as discussed in the courtroom; and (2) the duty to warn.

(Nov. 2, 2021 Min. Entry).[2] The letters were filed on December 2, 2021. (Doc. 186; Doc. 187).

For the reasons set forth below, Defendant's motion is GRANTED.

---

[2] Plaintiff conceded at oral argument, with respect to the dismissed negligence claim, that he did not "have a design-defect claim" and that, given the absence of expert evidence about a manufacturing defect, he "consent[ed] to dismiss[al]" of that theory as well. (Doc. 190 at 7:10-22). The entire claim for relief was, therefore, dismissed. (*Id.* at 8:2-3). To the extent the strict liability claim relies on those same theories (Am. Compl. ¶ 225 ("[T]he . . . tank and its component parts were not suited for their purpose and were defective at the time . . . [they] left the control of each of these defendants.")), the Court deems those theories abandoned for the same reasons. This point, however, appears moot—while Plaintiff did not explicitly plead a strict liability claim based on failure to warn, the parties appear to construe it solely on that basis. (*See* Def. Br. at 14 ("Plaintiff asserts common-law claims of negligence, strict products liability, and breach of warranty, on the basis of [Defendant's] allege failure to include adequate warnings . . . ."); Opp. Br. at 15). The Court, therefore, interprets the strict liability claim to proceed on that theory as well.

## BACKGROUND

The Court draws the undisputed facts from the pleadings, the Rule 56.1 Statement, and the Declarations of James W. Kirkpatrick and Kenneth Fromson (with the exhibits annexed thereto).

I.   The February 12, 2016 Explosion

Plaintiff was a brand new employee at Oprandy's, a company located in Middletown, New York, that serviced, inspected, and repaired fire extinguishers, compressed air tanks, and fire suppression systems. (56.1 Stmt. ¶ 1-3; *see also* 3d Party Compl. ¶¶ 7-8; 3d Party Ans. ¶ 2; Fromson Decl., Ex. C at 6:24-7:2).[3] On February 12, 2016, he was injured on the job. (56.1 Stmt. ¶ 3; *see also* Kirkpatrick Decl., Ex. 2 at 11; *id*., Ex. 3 at 16-17, 35-36; *id*., Ex. 15 at 2; Fromson Decl., Ex. A ¶ 2). The injury occurred when Chris Foust ("Foust"), a coworker, tried to fill a tank with compressed air. (56.1 Stmt. ¶¶ 3, 38; *see also* Kirkpatrick Decl., Ex. 2 at 11; *id*., Ex. 3 at 16-17, 35-36; *id*., Ex. 15 at 4-5; Fromson Decl., Ex. A ¶ 4). As Foust worked, Plaintiff listened for air entering the tank and watched to see if a pressure gauge on the tank moved. (56.1 Stmt. ¶¶ 38, 42; *see also* Kirkpatrick Decl., Ex. 1 at 70:7-12, 76:18-20; *id*., Ex. 14 at 35:19-37:11; *id*., Ex. 15 at 4; Fromson Decl., Ex. A ¶ 5). Plaintiff heard nothing and did not see the gauge move, so he believed no air was going into the tank. (56.1 Stmt. ¶ 42; *see also* Kirkpatrick Decl., Ex. 1 at 70:7-12, 76:18-20; *id*., Ex. 14 at 37:6-11; *id*., Ex. 15 at 3-4; Fromson Decl., Ex. A ¶ 5). Plaintiff testified, however, that as Foust "tinker[ed]," there:

> was a huge explosion, I guess you'd - - the ground just collapsed from under me, the shrapnel hit other fire extinguishers which caused them to explode chemicals all over the room. So we couldn't see or hear because [of] the explosion. When I realized I lost my leg[,] I crawled to the door and called for help[,] for Brian [Scott, Oprandy's owner,] and I tourniqueted my leg with my belt.

(Kirkpatrick Decl., Ex. 1 at 81:16-17, 83:25-84:10).

---

[3] Except for transcripts, citations to exhibits correspond to the pagination generated by ECF.

II.    The Test Tank

The tank, which Defendant sold to a third party who thereafter sold it to Oprandy's, was a "test tank." (56.1 Stmt. ¶¶ 3, 6; *see also* Kirkpatrick Decl., Ex. 3 at 11-12, 15-17; *id*., Ex. 11 at *id*., Ex. 11 at 44:1-46:18). Test tanks are used to test the integrity of fire suppression systems (i.e., pipes or tubes that would release a chemical agent or water to fight a fire) by blowing air through the system. (56.1 Stmt. ¶ 11; *see also* Kirkpatrick Decl., Ex. 7 at 10; *id*., Ex. 8 at 15:16-16:4, 36:8-37:6). Typically, as part of a practice referred to as "a balloon test," a balloon is tied to part of the fire suppression system and a test tank blows compressed gas through the system—if the balloon expands, the piping is intact; if not, the piping is compromised. (56.1 Stmt. ¶¶ 12-13; *see also* Kirkpatrick Decl., Ex. 7 at 10; *id*., Ex. 9 at 11:18-13:25; *id*., Ex. 11 at 158:13-159:25). Oprandy's used this particular test tank on systems in the field for balloon tests. (56.1 Stmt. ¶ 15; *see also* Kirkpatrick Decl., Ex. 11 at 127:6-9, 158:7-12).

The tank's markings—DOT 4BW 225 M453—were clear, even after the explosion:



(Kirkpatrick Decl., Ex. 2 at 15; *see also* 56.1 Stmt. ¶ 48). Those markings represented that the tank was designed and manufactured in accordance with specifications set by the U.S. Department of Transportation ("DOT"). (56.1 Stmt. ¶¶ 29, 47, 48; *see also* Kirkpatrick Decl., Ex. 2 at 11, 13-15;

*id.*, Ex. 3 at 33; *id.*, Ex. 4 at 44:4-21; *id.*, Ex. 5 at 5; *id.*, Ex. 8 at 21:18-22:16; *id.*, Ex. 11 at 40:9, 53:12-15; *id.*, Ex. 13 at 12; *id.*, Ex. 24 at 43:8-11; *id.*, Ex. 27 at 218:21-219:22; Fromson Decl., Ex. D at 33:17-34:8, 83:9-84:19); 49 C.F.R. §§ 178.35(f), 178.61.[4] Defendant did not fill test tanks before shipping them to customers. (56.1 Stmt. ¶ 30; Kirkpatrick Decl., Ex. 8 at 15:16-16:12).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore,

---

[4] Defendant, in the 56.1 Statement, states that, "[t]he ruptured test tank was a . . . (DOT) type 4BW cylinder designed and manufactured in accordance with DOT specifications." (56.1 Stmt. ¶ 47). Plaintiff responds: "Admit to the extent facts are stated, but cannot admit to statements of law, including statement that tank was a 'DOT type' cylinder in that facts do not establish what a 'DOT type' is and/or such description is a statement as to law." (*Id.*). Notably, Plaintiff does not challenge the material fact in issue (i.e., that the tank met DOT specifications)—rather, he concedes it. (*See* Opp. Br. at 5; Doc. 186 at 1 ("While the tank at issue was manufactured such that it was **qualified** to transport hazardous materials in commerce . . . ." (emphasis in original)); Doc. 190 at 27:11-13 ("[W]e embrace the fact that they met the DOT markings requirement[,] that this tank was qualified for use if and when someone put hazardous materials in it.")).

"where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City*

*of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant dismissing the complaint is proper").[5]

## ANALYSIS

The Hazardous Material Transportation Act ("HMTA"), 49 U.S.C. § 5101 *et seq.*, is meant "to protect against risks to life, property, and the environment that are inherent in the transportation of hazardous material in intrastate, interstate, and foreign commerce." 49 U.S.C. § 5101. As part of that goal, the statute provides for administrative, civil, and criminal penalties. *See* 49 U.S.C. §§ 5121-5124. Of note for the instant analysis, the HMTA also contains an express preemption provision which states, in pertinent part:

> [e]xcept as provided in subsection (c) of this section and unless authorized by another law of the United States, *a law, regulation, order, or other requirement of a State*, political subdivision of a State, or Indian tribe *about any of the following* subjects, *that is not substantively the same* as a provision of this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security, *is preempted*:
>
> . . .
>
> **(E)** the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce.

49 U.S.C. § 5125(b)(1)(E) (emphasis added). This language unambiguously preempts any New York common law duties. *See, e.g.*, *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008); *Bates v.*

---

[5] The Court, during oral argument, *sua sponte* raised the issue of whether preemption was pled as an affirmative defense. (Doc. 190 at 8:10-11:6). The Court did not rule on that question and heard argument. (*Id.* at 10:15). The Court concludes that preemption was pled in the eighth affirmative defense. (Answer at Aff. Def. ¶ 8 ("All acts . . . described . . . were in compliance with the regulatory standards or administrative regulatory safety standards relating to design . . . and therefore, any recovery . . . [is] barred . . . .")).

7

*Dow Agrosciences LLC*, 544 U.S. 431, 443 (2005); *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 106 (2d Cir. 2009).

There is no dispute that the tank was qualified for use in transporting hazardous material in commerce under federal law. (*See* 56.1 Stmt. ¶¶ 29, 47, 48; *see also* Kirkpatrick Decl., Ex. 2 at 11, 13-15; *id.*, Ex. 3 at 33; *id.*, Ex. 4 at 44:4-21; *id.*, Ex. 5 at 5; *id.*, Ex. 8 at 21:18-22:16; *id.*, Ex. 11 at 40:9, 53:12-15; *id.*, Ex. 13 at 12; *id.*, Ex. 24 at 43:8-11; *id.*, Ex. 27 at 218:21-219:22; Fromson Decl., Ex. D at 33:17-34:8, 83:9-84:19; Opp. Br. at 5; Doc. 186 at 1; Doc. 190 at 27:11-13). As such, any law "about . . . the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing" of that tank—including any common law duty— that is "not substantively the same as," *inter alia*, the HMTA or the regulations promulgated thereunder (the "Hazardous Material Regulations" or "HMR"), is preempted. 49 U.S.C. § 5125(b)(1)(E). This text is unambiguous and clearly preempts any claims for relief that would impose upon Defendant—as Plaintiff's claims would—duties beyond those required by federal law.[6] The Court's inquiry is, therefore, at an end. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021) (noting that "no amount of policy-talk can overcome a plain statutory command"); *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 177 (2004) ("The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

---

[6] "To make out a prima facie case for negligent failure to warn under New York law, a plaintiff must show that (1) the manufacturer had a duty to warn; (2) the manufacturer breached such duty so that the product is rendered defective, i.e. reasonably certain to be dangerous; (3) the defect was the proximate cause of the plaintiff's injury; and (4) that the plaintiff suffered loss or damage." *Gencarelli v. Coca-Cola Co.*, No. 20-CV-00085, 2020 WL 2561258, at *5 (N.D.N.Y. Apr. 13, 2020) (internal quotation marks omitted), *adopted by* 2020 WL 2559914 (N.D.N.Y. May 20, 2020). The same elements are required to state a claim for strict liability based on a failure to warn. *Reynolds-Sitzer v. EISAI, Inc.*, No. 21-CV-00145, 2022 WL 471530, at *4 n.4 (N.D.N.Y. Feb. 16, 2022) ("Failure to warn claims are identical under strict liability and negligence theories of recovery." (internal quotation marks omitted)).

Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." (alteration in original)); *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation marks omitted)).

Plaintiff, conceding tacitly that the duties he seeks to impose are "not substantively the same" as those imposed by the federal law, argues that the tank is outside the HMTA's reach. (Opp. Br. at 9-14). The three arguments Plaintiff makes in support of his position are: (1) the tank was neither manufactured nor intended to be used to transport hazardous materials; (2) his claims concern labeling, not markings; and (3) the tank met the definition of an exempted "empty packaging" under the HMR. (*Id.*). While the Court need not consider these arguments given the clarity of the statute, even if the Court considered them, none change the outcome of this motion.

I.   Use of the Tank

With respect to the tank's use, Plaintiff relies on the HMTA's legislative history to make the point that "the congressional objective in enacting the HMTA was to promote the safe transportation of hazardous materials and thereby minimize the number and extent of accidents involving carriers of hazardous materials." (*Id.* at 12 (quoting *Sawash v. Suburban Welders Supply Co.*, 553 N.E.2d 894, 897-98 (Mass. 1990)); *see also* 49 U.S.C. § 5101. Plaintiff insists, therefore, that the tank is not governed by the HMTA because it was neither intended nor used to transport hazardous materials. (Opp. Br. at 12-13). Specifically, Plaintiff argues:

> by the description of its own employees, the test tank was supplied
> by Defendant empty and to be used and reused by the end user as a
> tool to test its fire suppressions systems as required by the
> [Authority Having Jurisdiction]. It was not manufactured to supply
> and transport hazardous materials to purchasers, or for purchasers to
> supply and transport hazardous materials to others. Thus, the cases
> Defendant cite[s], which involve such facts, are inapplicable. *As the
> tank's purpose never was to transport hazardous materials in*

> *commerce*, its use as a test tool for which it was supplied is not a
> matter preempted by the HMTA.

(*Id*. at 13 (emphasis added)).

The fundamental problem with this argument is that, for the Court to adopt it, the Court would have to ignore the unambiguous language of the HMTA and insert modifiers to better achieve Congress' stated goal. That is not the judiciary's function. In order for the preemption clause to apply, the statute, as written, requires only that the non-federal law be "about . . . the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing" of the tank. 49 U.S.C. § 5125(b)(1)(E). The statute does not require that the tank have been intended for use in—or actually used in—transportation. Bearing in mind that the Second Circuit has yet to consider this issue, the Third Circuit's decision in *Roth v. Norfalco LLC*, 651 F.3d 367 (3d Cir. 2011) is instructive on this point.

The plaintiff in *Roth* was injured when, two days after failing to extract sulfuric acid from a train car and assuming that the car was no longer pressurized, he removed a pipe from the car and acid sprayed over his "face and chest . . . causing severe burns." *Id*. at 373. The Third Circuit concluded that Plaintiff's claims (which included common law negligence and strict liability) were preempted and noted that "the structure and purpose of the HMTA confirms what the text of § 5125(b)(1) makes plain: the HMTA preempts state common law claims that, if successful, would impose design requirements upon a package or container qualified for use in transporting hazardous materials in commerce." *Id*. at 379. The plaintiff there argued, however, that the HMR rendered the statute inapplicable to the accident. *Id*.

After observing—as this Court has—that it need not consider the HMR because the statute was unambiguous, the Third Circuit rejected the plaintiff's argument:

> Roth concedes that Norfalco's tank cars are containers qualified for
> use in transporting hazardous materials in commerce. Thus, the

> HMTA plainly encompasses Roth's common law claims. It is
> irrelevant what Roth was doing at the precise moment of his injury.
> This only makes sense, for it cannot be the case that the
> comprehensive design requirements erected by the HMTA cease to
> govern simply because the tank car was emptied of its contents days
> after its delivery. The tank car is, at all times, a container qualified
> for use in transporting hazardous materials. The proposed design
> requirement is expressly preempted.

*Id*. at 380; *see also Parrish v. JCI Jones Chems., Inc.*, No. 17-CV-00518, 2019 WL 1410880, at

*6 (D. Haw. Mar. 28, 2019) ("[W]hat is relevant here is not whether the chlorine was literally in

transport, but rather whether Plaintiffs seek to impose requirements on devices *used in*

*transporting* hazardous materials. Indeed, Plaintiffs seek to mandate new state-law conditions . . .

. Therefore, Plaintiffs' claims are preempted by federal law regardless of what Mr. Parrish was

doing at the time of his injury." (emphasis in original)); *Mawa Inc. v. Univar USA Inc.*, No. 15-

CV-06025, 2016 WL 2910084, at *5 (E.D. Pa. May 19, 2016) (concluding that the plaintiff's

claims were preempted under § 5125(b)(1) because "[t]he HMTA's requirements for the

packaging, handling, and labeling of containers do not cease to apply because [the plaintiff's

employee] was beginning the decommissioning process at the time of the injury"); Common Law

Tort Claims Concerning Design and Marking of DOT Specification 39 Compressed Gas Cylinders,

77 FR 39567-01, 2012 WL 2521268 (July 3, 2012) (rejecting the argument that a container must

be in "transportation" and concluding that § 5125(b)(1)(E) "must govern the adequacy of the

cylinder at all times that it is represented, marked, certified, or sold as qualified for use in

transporting hazardous material in commerce, and not just the period in time when it was used to

transport hazardous material" (internal quotation marks omitted)).

In short, the tank need only be "represented, marked, certified, or sold as qualified for use

in transporting hazardous material in commerce" for the preemption clause to apply. The tank was

so qualified, therefore § 5125(b)(1)(E) applies regardless of its use.

II.   Labels Versus Markings

Plaintiff's second argument, looking to the text of the HMTA and HMR, is that his claims concern *labels* as opposed to *markings* and, therefore, cannot be preempted. (Opp. Br. at 14). This theory stems from the textual difference between two provisions within § 5125(b)(1):

> **(B)** the packing, repacking, handling, labeling, marking, and placarding of hazardous material;
>
> . . .
>
> **(E)** the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce.

Plaintiff reasons that § 5125(b)(1)(B)—which includes "labeling"—concerns hazardous material inside the tank, but that § 5125(b)(1)(E)—which omits "labeling"—concerns the tank itself. Therefore, Plaintiff maintains, because "labeling" was omitted from § 5125(b)(1)(E), any claims about "labeling relating to the container's use" are not preempted. (Opp. Br. at 14).

The parties agree that the tank was empty (i.e., it contained no hazardous material) when Defendant sold it. (56.1 Stmt. ¶ 30; Kirkpatrick Decl., Ex. 8 at 15:16-16:12). The fundamental problem with Plaintiff's argument, then, is that if allowed to proceed, the claims could impose upon Defendant the additional duty of labeling the tank about the anticipated uses or the hazardous material that the end-user might, could, or is expected to introduce into the tank at some point. Notwithstanding Plaintiff's characterization of this argument, the reality is that Plaintiff insists Defendant should have included information not required for the tank to be qualified for transporting hazardous materials under federal law. Allowing such a claim would remove from the express preemption provision a container that, although complying with federal requirements as

to the container itself, did not have any labels about the hazardous material that may, eventually, be placed inside it.[7]

The statute bars any common law duty that is not "substantively the same" as that imposed by federal law. Adopting this argument would clearly violate that prohibition and create a carveout under § 5125(b)(1)(E) for reusable containers. This argument is unpersuasive.

III.   Empty Packaging

Plaintiff's final argument relies upon those portions of the HMR governing "empty packaging." (*See* Opp. Br. at 10-12). After noting that 49 C.F.R. § 171.1(f)(1) cites 49 U.S.C. § 5125 and incorporates some language therefrom, Plaintiff cites the empty packaging regulations which advise:

> (b) Notwithstanding the requirements of paragraph (a) of this section, an empty packaging is not subject to any other requirements of this subchapter if it conforms to the following provisions:
>
> (1) Any hazardous material shipping name and identification number markings, any hazard warning labels or placards, and any other markings indicating that the material is hazardous (e.g., RQ, INHALATION HAZARD) are removed, obliterated, or securely covered in transportation. This provision does not apply to transportation in a transport vehicle or a freight container if the packaging is not visible in transportation and the packaging is loaded by the shipper and unloaded by the shipper or consignee;
>
> (2) The packaging—
> (i) Is unused;
>
> . . . ; and
>
> (3) Any material contained in the packaging does not meet the definitions in § 171.8 of this subchapter for a hazardous substance, a hazardous waste, or a marine pollutant.

---

[7] This is, of course, separate and apart from the fact that, if the tank contained a hazardous material, any labeling requirements would presumably be preempted by § 5125(b)(1)(B).

49 C.F.R. § 173.29(b). The conclusion, according to Plaintiff, is that because the tank constituted empty packaging under this definition when Defendant sold it, the HMR removed the tank from the preemption clause's realm. (Opp. Br. at 12).

There are at least three problems with this argument. First, in order for this regulation to apply, the first element requires that "[a]ny *hazardous material* shipping name and identification number markings, any hazard warning labels or placards, and any other markings indicating that *the material is hazardous* . . . are removed, obliterated, or securely covered in transportation." 49 C.F.R. § 173.29(b)(1) (emphasis added). The tank could not meet this definition because, quite simply: (1) Plaintiff cites no evidence suggesting that the tank ever had labels concerning hazardous material that were removed; and (2) Defendant sold the tank depressurized, without any hazardous material therein. (56.1 Stmt. ¶ 30; Kirkpatrick Decl., Ex. 8 at 15:16-16:12). Second, the regulatory structure counsels against Plaintiff's argument because Subchapter C, Subpart B— where this regulation is located—is entitled, "Preparation of Hazardous Materials for Transportation." 49 C.F.R. § 173.29. Plaintiff argues affirmatively that this fact pattern does not concern the tank's transport. (*See* Opp. Br. at 13 ("As the tank's purpose never was to transport hazardous materials . . . .")).[8] Finally, even if none of the aforementioned obstacles existed, the regulation says that the tank would not be "subject to any other *requirements of this subchapter* . . . ." 49 C.F.R. § 173.29(b) (emphasis added). That language does not remove the tank from the HMTA's sphere and its preemption provision.

---

[8] A point raised by Plaintiff during argument and addressed in the post-argument letters is the idea that, when used by Oprandy's to transport compressed air, it qualified as a "material of trade" under the HMR and was, therefore, exempted. (*See* Doc. 186 at 2 n.2; Doc. 190 at 38:22-40:3). That argument is, however, unconvincing because: (1) the statute makes no such distinction and it is immaterial how the tank was used; and (2) "material of trade" is defined, in pertinent part, as "a hazardous material . . ." 49 C.F.R. § 171.8.

In sum, because Plaintiff's claims for relief would necessarily impose requirements beyond those required by federal law, they are preempted by 49 U.S.C. § 5125(b)(1)(E) and must be dismissed. The clever lawyer's argument that the application of the HMR to the facts of this case should somehow exclude this tank from the preemption rule is subterfuge and would require the Court to ignore the plain meaning of the statute. The test for preemption is only whether an "other requirement of a State" (i.e., common law duty) is "not substantively the same as a provision of this chapter [Chapter 51 of Title 49], a regulation prescribed" thereunder, or any other directive identified by the preemption provision. Nowhere does the plain wording of § 5125(b)(1) support, *in haec verba* or by inference, the argument that application of the HMR to Plaintiff's theories and fact pattern would exclude this scenario from preemption. It is a comparison of the common law duties raised in this action to any of the statutory provisions, regulations, *or* directives as set forth in § 5125(b)(1) which supplies the preemption answer. Here, the comparison of Plaintiff's allegations and common law duties to the statutory provision supplies the answer, so the HMR and the other directives referenced do not even need to be considered. The action is preempted by the HMTA. Given this result, the Court need not and does not reach Defendant's remaining arguments.

## <u>CONCLUSION</u>

In light of the foregoing, because Plaintiff's claims for relief against Defendant are preempted by the HMTA, Defendant's motion for summary judgment is GRANTED and the Amended Complaint is DISMISSED.

Notwithstanding the fact that Plaintiff's claims for relief have been dismissed, the third-party action between Defendant and Oprandy's remains pending, although Defendant indicated on the record during oral argument a willingness to abide the result of this motion. Accordingly, the

15

Court shall hold a telephonic status conference at 11:30 a.m. on April 7, 2022. At the time of the conference, all parties shall call: (888) 398-2342; access code: 3456831.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 171.


**SO ORDERED:**

Dated:     White Plains, New York
           March 11, 2022

_____

PHILIP M. HALPERN
United States District Judge